**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**HUGO VILLARREAL-SOLIS,**

        **Petitioner,**

**v.**                                  **Civil Action No.: 3:23-CV-2
(GROH)**

**ACTING WARDEN D. ROANE,**

        **Respondent.**

## <u>REPORT AND RECOMMENDATION</u>

### I.   INTRODUCTION

On January 3, 2023, Petitioner Hugo Villarreal-Solis, an inmate incarcerated at FCI Gilmer, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, claiming that officials at FCI Gilmer refuse to respond to or grant his request to be transferred to another correctional facility. ECF No. 1 at 1, 5.[1] Petitioner paid the filing fee on January 30, 2023. ECF No. 5.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

---

[1] All ECF numbers cited herein are from the instant case, 3:23-CV-2, unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Conviction and Sentence[2]

On May 31, 2001, an indictment was returned in the Western District of Texas charging Petitioner with various drug trafficking offenses, including three counts of murder in furtherance of a continuing criminal enterprise. ECF No. 4.[3] A second superseding indictment was returned on January 30, 2002. ECF No. 128. Trial commenced on February 4, 2002. ECF Nos. 140 – 143. The jury convicted Petitioner of counts 1 through 27 of the second superseding indictment. ECF No. 323. An initial judgment [ECF No. 182] was made[4] on May 31, 2002, and an amended judgment was entered on July 18, 2006. Id. At sentencing, the Government moved to dismiss Count 1, which was granted. Id.

Among other offenses, Petitioner was convicted of the following:

> [O]perating a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) & (c) (Count 2); two counts of conspiracy to use or carry a firearm and to commit murder during the course of a firearm crime in violation of 18 U.S.C. §§ 924(c), 924(j) and 924(o) (Counts 16 and 20); one count of using and carrying a firearm in violation of § 924(c) (Count 17); and three counts of murder during the course of a firearm crime in violation of §§ 924(c) and 924(j) (Counts 18, 19 & 22).

In re: Hugo Villarreal-Solis, No. 20-50514, (5th Cir. 2021) at 1. See also United States v.

---

[2]    The facts are taken from Petitioner's criminal conviction in the Western District of Texas, in case number 5:01-CR-314, available on PACER. Unless otherwise noted, the ECF entries in sections II.A., II.B., and II.C. refer to that criminal case. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[3]    Because of the age of the proceedings and sealed nature of many docket entries, the undersigned relies upon the docket entries and opinions issued by the Court of Appeals for the Fifth Circuit to summarize the proceedings in the district court.

[4]    The Amended Judgment [ECF No. 323] states that sentence was pronounced on May 31, 2022, however, the initial judgment [ECF No. 182] was dated and docketed on June 6, 2002.

2

<u>Villarreal-Solis</u>, 799 F. App'x 277, 277 – 278 (5th Cir. 2020).

The amended judgment sentenced Petitioner to life imprisonment, plus 420 months. ECF No. 323 at 4. Further, in its amended judgment, the district court made the following recommendations to the Bureau of Prisons:

> **(1)** That the defendant be designated to a federal facility as soon as possible. **(STRONGLY RECOMMENDED)**
>
> **(2)** That the defendant be placed in the highest level of security possible because the Court finds defendant to be extremely dangerous. The court also finds that if defendant is not placed in the highest level of security possible, defendant is likely to continue his criminal activity from within the Bureau of Prisons facility. **(STRONGLY RECOMMENDED)**
>
> (3) That the defendant spend the rest of his life in prison and that he never be released from prison.

<u>Id.</u> (Emphasis in original).

**B.    Direct Appeal**

On June 7, 2002, Petitioner filed a notice of appeal with the United States Court of Appeals for the Fifth Circuit, in that Court's docket 02-50635. ECF No. 184. On or about August 15, 2003, the Fifth Circuit affirmed the judgment of the district court. ECF No. 232.

**C.    Motions to Vacate Pursuant to 28 U.S.C. § 2255**

On March 8, 2006, Petitioner filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. ECF Nos. 292[5], 317 at 2. Following the issuance of a Report and Recommendation, on July 13, 2006, the district court adopted the June 22, 2006, Report and Recommendation of the magistrate judge. ECF Nos. 317, 321. In its July 13, 2006, order, the district court ordered that "movant's criminal

---

[5]  This motion was also assigned civil action number 5:06-CV-194.

judgment be AMENDED to reflect a sentence on counts 16 and 20 of twenty years to run concurrently with the life sentences on counts 2, 3, 4, 5, 18, 19 and 22; otherwise, movant's 28 U.S.C. § 2255 motion is denied." ECF No. 321 at 2, 5. As discussed above, on July 18, 2006, the Amended Judgment was filed. ECF No. 323.

Petitioner filed an appeal[6] of that judgment to the Fifth Circuit by filing a notice of appeal on July 24, 2006, in that court's docket number 06-50925. ECF Nos. 325, 329. By order entered on July 27, 2007, the Fifth Circuit denied Petitioner's motion for a certificate of appealability to appeal the district court's denial of his 28 U.S.C. § 2255 motion. U.S.C.A. 5th Cir. 06-50925 Document 31-1.

The district court repeatedly denied Petitioner authorization to file a second or successive motion under § 2255, on the following dates:

(1) October 30, 2006, [ECF No. 334];

(2) May 3, 2007 [ECF No. 346], also assigned case number 5:07-CV-377;

(3) October 26, 2009, [ECF No. 371], also assigned case number 5:09-CV-795;

(4) February 11, 2010, [ECF No. 373] (denying reconsideration of ECF No. 371);

(5) January 28, 2015, [ECF No. 393] (denying Certificate of Appealability as to Petitioner's notice of appeal of final judgment); and

(6) July 31, 2017, [ECF No. 419], also assigned case number 5:17-CV-675.

The Fifth Circuit repeatedly denied Petitioner authorization to file a second or successive motion under § 2255, in the following cases:

(1) docket number 06-50925, denied on July 27, 2007, [ECF No. 355];

---

[6] Petitioner also filed an interlocutory appeal in 06-50804, which was denied by the Fifth Circuit on August 8, 2006 [ECF No. 331], and an appeal in 08-50539 which was dismissed because "a review of the docket of the district court shows no order or ruling from which an appeal can be taken" [ECF No. 367].

(2) docket number 07-50051, denied on July 27, 2007, [U.S.C.A. 5th Cir. 07-50051, Document No. 23-1];

(3) docket number 07-50874, denied on February 26, 2008, [ECF No. 360];

(4) docket number 12-50964, denied May 28, 2013, [ECF No. 386];

(5) docket number 16-50647, denied on July 21, 2016, [U.S.C.A. 5th Cir. 16-50647, Document No. 18-2]; and

(6) docket number 18-50544, denied on August 31, 2018 [U.S.C.A. 5th Cir. 18-50544, Document No. 17].

In addition to the above attempts to obtain relief, Petitioner has filed numerous motions under the Federal Rules of Civil Procedure, and the United States Code. The Fifth Circuit commented on Petitioner's prodigious filing in its denial of another attempt to obtain a certificate of appealability to appeal the denial of Petitioner's Federal Rule of Civil Procedure 60(b) motion challenging the denial of his previous 28 U.S.C. § 2255 motion. U.S.C.A. 5th Cir. 14-51304, Document No. 27-1. There the Court issued the following sanctions warning:

> Because Villarreal-Solis has filed repetitive pleadings contesting the validity of his convictions and sentences, he is cautioned that the continued filing of frivolous, repetitive, or otherwise abusive pleadings will invite the imposition of sanctions, which may include dismissal, monetary sanctions, and restrictions on his ability to file pleadings in this court and any court subject to this court's jurisdiction. Villarreal-Solis is also cautioned to review any pending matters and dismiss any that raise frivolous and repetitive issues

Id. at 2.

### D.   Instant Proceedings Under 28 U.S.C. § 2241

Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241,

on January 3, 2023, wherein he claims that his multiple requests for a transfer to a correctional facility closer to his family in San Antonio, Texas, have been ignored and denied by FCI Gilmer staff. ECF No. 1 at 5. Petitioner asserts that he first requested a transfer in July 2022, and has yet to receive a response from FCI Gilmer. Id. Petitioner contends that the inaction by FCI Gilmer officials violates Department of Justice guidelines on inmate transfers. Id. Further, Petitioner asserts that although he has presented the facts in his petition to the prison's internal grievance procedure, that he has received no response to his filings. Id. at 7. Among the attachments to his petition are copies of various BOP forms:

> (1) an "Inmate Request to Staff" dated December 8, 2022 [ECF No. 1-2 at 2];
>
> (2) BP-S148.055 "Inmate Request to Staff" dated July 28, 2022 [Id. at 3];
>
> (3) TRULINCS email communication dated July 29, 2022, regarding Request to Staff [Id. at 4];
>
> (4) BP-S148.055 "Inmate Request to Staff" dated August 12, 2022 [Id. at 5];
>
> (5) TRULINCS email communication dated December 7, 2022, from Petitioner's son [Id. at 6];
>
> (6) "Individualized Needs Plan" dated May 4, 2022 [Id. at 7 - 10]; and
>
> (7) Male Custody Classification Form [Id. at 11].

As relief, Petitioner asks the Court to order: (1) FCI Gilmer to "follow U.S. Department of Justice Federal Bureau of Prisons rules and regulations regarding inmate transfers and responding to inmate grievances/remedy requests"; (2) FCI Gilmer to respond to his request for transfer; and (3) Petitioner's transfer to a location closer to his family. Id. at 8.

6

Respondent filed a motion to dismiss, or in the alternative, motion for summary judgment, and memorandum in support thereof on February 28, 2023, along with two exhibits. ECF Nos. 8, 8-1, 8-2, 8-3. In the memorandum, Respondent argues that Petitioner failed to exhaust his administrative remedies prior to filing the instant action. ECF No. 8-1 at 4. Respondent contends that "had Petitioner filed administrative remedies, there would be a record showing whether Petitioner had in fact requested a nearer release transfer, and, if a transfer was denied, the basis for the denial." Id. at 5. Further, Respondent argues that inmate transfers and custody or security classifications are within the discretion of the Bureau of Prisons. Id. Finally, Respondent argues that Petitioner's claim is not cognizable in a § 2241 petition because Petitioner does not challenge the execution of his sentence, but instead challenges the conditions of his confinement. Id. at 6.

On March 13, 2023, Petitioner filed a response, wherein he contends that: (1) Respondent has misrepresented Petitioner's efforts to seek an administrative remedy; (2) he has exhausted his administrative remedies; (3) FCI Gilmer continues to fail to meet his medical and educational needs; and (4) denial of transfer for Petitioner is unreasonable and causes him on-going harm. ECF No. 10 at 1. Petitioner again requests an order directing FCI Gilmer to follow existing guidelines, which he asserts support his claim that transfer is appropriate. Id. Attached to Petitioner's response are the following exhibits:

(1) BP-S148.055 "Inmate Request to Staff" dated July 20, 2022, with notation "Unit Team agrees" dated July 25, 2022, although there is no staff signature [ECF No. 10 at 2];

(2) BP-S148.055 "Inmate Request to Staff" dated July 13, 2022 [Id. at 3];

(3) BP-A148.055 "Inmate Request to Staff" dated March 9, 2023 [Id. at 4];

(4) BP-S148.055 "Inmate Request to Staff" dated January 23, 2023 [Id. at 5];

(5) BP-A0148 "Inmate Request to Staff" dated January 20, 2023 [Id. at 6];

(6) "FCI Gilmer Health Services Medical/Dental Sick Call Triage Form" dated November 17, 2022 [Id. at 7];

(7) "FCI Gilmer Health Services Medical/Dental Sick Call Triage Form" dated January 4, 2023 [Id. at 8];

(8) BP-A0148 "Inmate Request to Staff" dated February 20, 2023 [Id. at 9];

(9) "Jail Time Consulting LLC" letter to Case Manager Fisher dated April 8, 2021 [Id. at 10 – 13]; and

(10) TRULINCS message dated March 8, 2023, from Joel Villarreal.

On March 15, 2023, Respondent filed a reply which asserts that Petitioner failed to exhaust his administrative remedies, and contends that "it is not sufficient that an inmate repeatedly submit Inmate Requests to Staff, as Petitioner did here, to appropriately exhaust."[7] ECF No. 12 at 2. Respondent argues that although Petitioner did exhaust a series of administrative remedies relating to an institutional transfer in Central Office Remedy Appeal 856206-A1, as of March 16, 2017, this occurred prior to both the passing of the First Step Act, and Petitioner's transfer to FCI Gilmer, and further, that this exhaustion would not apply to the administrative remedies available at FCI Gilmer. Id. at 3.

Further, Respondent argues that transfer of an inmate to a location closer to his

---

[7]   In addition, Respondent asserts that Petitioner raises issues regarding his educational and medical needs for the first time in his response.

primary residence, must be tempered by considerations including bed availability, and prisoner's security designation. Id. Moreover, Respondent argues that BOP retains broad discretion to determine where an inmate is housed. Id. at 4. Finally, Respondent contends that Petitioner's claim is not cognizable in a § 2241 petition because Petitioner does not challenge the execution of his sentence, but rather the conditions of his confinement, including the location of confinement. Id. at 5.

On March 17, 2023, Petitioner filed seven letters in support of his transfer. ECF No. 13. The letters are signed by Anthony Ricci of Jail Time Consulting LLC, Joel Villarreal, Anthony Villarreal, Andrew Villarreal[8], Emily Villarreal, and Stephanie Villarreal.

### III.    STANDARD OF REVIEW

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

#### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines

---

[8] Andrew Villarreal signed two separate letters which, although undated, appear to have been written at different times based on Andrew Villarreal's description of himself as 19 [ECF No. 13 at 7 - 8] and 21 [Id. at 6] in the two letters. The letter in which Andrew Villarreal describes himself as 19 years old, contains the handwritten notation "Year 2021". Id. at 7.

v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[9] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.    Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 – 499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at

---

[9] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

498.

### D.    Exhaustion of Administrative Remedies

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[10]

addresses the Bureau's Administrative Remedy Program, and directs inmates on the

processes necessary to exhaust their administrative remedies by filing four mandatory[11]

remedies: (1) an informal resolution (BP-8)[12]; (2) an administrative remedy at the facility

(BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central

office (BP-11).  Failure to complete all four mandatory remedies is fatal to a claim based

on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust

administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. §
> 542.13–.15 (2009). First, an inmate normally must present
> his complaint informally to prison staff using a BP–8 form. If
> the informal complaint does not resolve the dispute, the
> inmate may make an "Administrative Remedy Request" to
> the prison Warden using a BP–9 form. The BP–8 and BP–9
> forms are linked. Both forms involve a complaint arising out
> of the same incident and both must be submitted within

---

[10]  See https://www.bop.gov/policy/progstat/1330_018.pdf.

[11]  Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution.  BOP PS 1330.18 § 542.13.b.

[12]  Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

> twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

### E.  Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its

face." Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan  Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion  to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

**F.**     **Motions for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id.  The "mere existence of a scintilla of

evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).   Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).   See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).   Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.   42 U.S.C. § 1997e(a).   "Federal prisoners must exhaust their

administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."   McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.   Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.   Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).   "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"   Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of cause and prejudice. Petitioner claims that he has exhausted his remedies, and provided numerous copies of various Inmate Request to Staff forms which he contends demonstrate his exhaustion. However, the Respondent argues that the Bureau of Prisons has no record in its three-tiered administrative remedy process of Petitioner exhausting an administrative remedy on this matter. ECF No. 8-1 at 4. Respondent has submitted documents which demonstrate that Petitioner has previously exhausted the administrative remedy process, as evidenced by the March 16, 2017, exhaustion of a series of administrative remedies relating to an institutional transfer request in Central Office Remedy Appeal 856206-A1.[13] Id. Respondent's reply further argues that Petitioner's exhibits attached to his response "are unrelated to a request for transfer, but rather address Petitioner's concerns about withdrawing from his educational classes

---

[13] Respondent notes that this date was prior to both the passage of the First Step Act and Petitioner's transfer to FCI Gilmer. ECF No. 12 at 3.

and requests to be seen by Health Services." ECF No. 12 at 2. Further, Respondent argues that "the sole Inmate Request to Staff form Petitioner attached which does address a request for transfer was not even filed until March 9, 2023, which was two months after Petitioner filed the instant action."[14] Id. at 2. As to the process for exhaustion, Respondent contends "it is not sufficient that an inmate repeatedly submit Inmate Requests to Staff, as Petitioner did here, to appropriately exhaust." Id.

As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The petition states that Petitioner attempted to exhaust his available administrative remedies, however, the exhibits submitted by the parties do not support

---

[14] However, Respondent ignored the exhibits Petitioner attached to his petition, including: the December 8, 2022, Inmate Request to Staff seeking a transfer [ECF No. 1-2 at 2]; the July 28, 2022, Inmate Request to Staff seeking a transfer closer to San Antonio, Texas [Id. at 3]; July 29, 2022, TRULINCS email to R. M. Wolfe asking for a transfer closer to San Antonio, Texas [Id. at 4]; and August 12, 2022, Inmate Request to Staff seeking a transfer closer to his family [Id. at 5].

that contention. Although Petitioner repeatedly sent TRULINCS emails and Inmate Request to Staff forms seeking a transfer, he fails to demonstrate that he ever filed a BP-8, the initial step to comply with Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq., regarding the exhaustion of administrative remedies.

Further, Petitioner's prior exhaustion of administrative remedies through the Central Office[15] on the same topic of institutional transfer, shows that Petitioner both understood the process and previously sought relief on the same issue multiple times, including through final disposition on the matter at the Central Office. ECF No. 8-3. Respondent provided a copy of Petitioner's "Administrative Remedy Generalized Retrieval Unsanitized Format" which shows that from 2014 through 2021, Petitioner filed fifteen administrative remedies on the following five topics: (1) "request to transfer closer home"; (2) "req. transfer"; (3) "requests a transfer"; (4) "claims improper medical care"; and (5) "wants compassionate release". ECF No. 8-2, 8-3 at 15 – 16. Twelve of the administrative remedy requests related to transfers:

(1)     Remedy (1)(a), Remedy ID 804964-F1, filed at the facility on December 18, 2014, requesting a transfer closer to home, was closed on January 5, 2015 [ECF No. 8-3 at 15];

(2)     Remedy (1)(b), Remedy ID 804964-R1, filed at the Regional Office on January 21, 2015, requesting a transfer closer to home, was closed on January 30,

_____

[15] Each administrative grievance is assigned a specific remedy ID. The numerical portion of the Remedy ID before the hyphen is known as the Case Number which is used to track subsequent submissions or appeals of the same administrative grievance. Following the hyphen, there is a Submission ID comprised of one letter and one number. The letter indicates which level of the BOP administrative remedy program has received the grievance. The letter "F" indicates that the submission was received by an individual federal correctional facility. The subsequent number indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program. The letter "R" indicates that the submission was received by individual regional office.  The letter "A" indicates that the submission was received by the BOPs Central Office.

2015 [Id.];

(3)     Remedy (1)(c), Remedy ID 804964-A1, filed at the Central Office on March 2, 2015, requesting a transfer closer to home, was closed on May 8, 2015 [Id.];

(4)     Remedy (1)(d), Remedy ID 804964-A2, filed at the Central Office on June 8, 2015, requesting a transfer closer to home, was closed on June 24, 2015 [Id.];

(5)     Remedy (2), Remedy ID 850548-R1, filed at the Regional Office on February 2, 2016, requesting a transfer, was closed on February 2, 2016 [Id.];

(6)     Remedy (3), Remedy ID 855771-F1, filed at the facility on March 18, 2016, requesting a transfer, was closed on March 18, 2016 [Id.];

(7)     Remedy (4)(a), Remedy ID 856206-F1, filed at the facility on March 23, 2016, requesting a transfer, was closed on April 8, 2016 [Id.];

(8)     Remedy (4)(b), Remedy ID 856206-R1, filed at the Regional Office on April 22, 2016, requesting a transfer,  was closed on April 27, 2016 [Id.];

(9)     Remedy (4)(c), Remedy ID 856206-R2, filed at the Regional Office on May 13, 2016, requesting a transfer, was closed on May 13, 2016 [Id.];

(10)    Remedy (4)(d), Remedy ID 856206-R3, filed at the Regional Office on June 7, 2016, requesting a transfer, was closed on June 29, 2016 [Id.];

(11)    Remedy (4)(e), Remedy ID 856206-R4, filed at the Regional Office on August 2, 2016, requesting a transfer, was closed on September 14, 2016;

(12)    Remedy (4)(f), Remedy ID 856206-A1, filed at the Central Office on October 7, 2016, requesting a transfer, was closed on March 16, 2017 [Id. at 16].

Although Petitioner contends that FCI Gilmer refused to respond to or grant his request for a transfer to another institution, and that he attempted to exhaust him

administrative remedies, a review of the exhibits of the parties is dispositive. ECF No. 1 at 5, 7. A review of Petitioner's exhibits shows that he never requested a transfer as part of the Bureau of Prisons' administrative remedy system by filing a BP-8, BP-9, BP-10, or BP-11 form with the appropriate authority at FCI Gilmer, as is required by Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.

It is clear that Petitioner has failed to exhaust all administrative remedies available to his claim that he should be transferred to another institution closer to his family. Such a failure to exhaust may be excused for cause and prejudice, however, Petitioner has not alleged or demonstrated either. The petition does not allege that Petitioner was denied access to the forms necessary to file his administrative remedies, or that staff failed or refused to submit those forms once prepared by Petitioner, or any other basis on which he was deprived of the opportunity to submit administrative remedy forms. Accordingly, the undersigned finds that no cause or prejudice exists to excuse Petitioner's failure to exhaust. Although Plaintiff claims he submitted numerous requests to staff related to a transfer, those requests to staff are not a sufficient substitute for filing BP-8, BP-9, BP-10, and BP-11 administrative remedy forms which are required to exhaust pursuant to 28 C.F.R. § 542.13–.15, and BOP Program Statement 1330.18 § 542.10 et seq.

Accordingly, were the Court to consider Petitioner's claim under § 2241, it is clear that this Court is without jurisdiction to consider the merits of his petition because Petitioner failed to exhaust his administrative remedies prior to filing this action.  When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better

Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

   **B.    Petitioner's Claim is Not Cognizable in a § 2241 Proceeding**

   Even if Petitioner had exhausted his administrative remedies prior to filing the instant action, he is still not entitled to relief because the claim he raises is not properly considered under § 2241.

   Petitioner seeks the writ of habeas corpus challenging his prison conditions, and asserts that he has been improperly denied transfer to a facility closer to his family in San Antonio, Texas. ECF No. 1 at 1, 5. For relief, Petitioner does not seek release from custody, to shorten his incarceration, or to restore any good time credit. Rather, Petitioner seeks to have the Court order the Bureau of Prisons to transfer him to another facility. ECF No. 1 at 8.

   To the extent that Petitioner contends that the BOP, acting through its administration or through FCI Gilmer, failed to properly determine his facility placement, or custody classification, his petition fails because neither the fact nor the length of his confinement are contested. Because Petitioner seeks relief that does not affect the fact or duration of his confinement, his claim is inappropriate for consideration under § 2241.[16] As stated by the Supreme Court:

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254,[17] and a complaint under . . . 42 U.S.C. § 1983. Challenges to the validity of any confinement or to

---

[16] Even if Petitioner had stated a claim based upon the fact or duration of his confinement, that claim would still be subject to dismissal for failure to exhaust his administrative remedies, as discussed in Section B. below.

[17] Federal prisoners may file a petition under § 2241 to challenge the fact or duration of confinement.

> particulars affecting its duration are the province of habeas corpus." An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.[18]

Hill v. McDonough, 547 U.S. 573, 579 (2006) (internal citations omitted). The Supreme Court previously explained in a challenge by two prisoners that, "[b]ecause neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus' . . . [and] the prisoners' claims for *future* relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (internal citations omitted).

In his petition, it is clear that Petitioner does not attack, nor are his claims related in any way to, the execution of his sentence. He does not challenge the validity of his confinement or seek speedier release from confinement. Instead, he complains about his placement based on FCI Gilmer's alleged improper application of the United States Department of Justice guidelines on inmate transfers.[19] Accordingly, it appears that the Petitioner has failed to assert a claim for which relief can be granted under 28 U.S.C. § 2241, and his petition must be dismissed.

---

[18]    Actions filed under § 1983 are civil rights actions against state actors. In Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971), the Supreme Court created a counterpart to §1983, so that in limited circumstances individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Egbert v. Boule, 142 S.Ct. 1793 (2022).

[19]    Petitioner cites to such Guidelines, but provides no citation for the same. A review of the Department of Justice website reveals a program for "International Prisoner Transfers", Justice Manual, Title 9, Section 9-35.000. https://www.justice.gov/jm/jm-9-35000-international-prisoner-transfers.

Further, the Department of Justice website contains policies for "Requests for Special Confinement Conditions", Justice Manual, Title 9, Section 9-24.000. https://www.justice.gov/jm/jm-9-24000-requests-special-confinement-conditions. However, those requests are related to the authority of the Bureau of Prisons (BOP) to implement 'special administrative measures' upon written notification to BOP 'that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.'"

Further, to the extent that Petitioner alleges that the BOP improperly designated him to a facility more than 500 driving miles of his residence[20], the same is not cognizable in a habeas petition. The Fourth Circuit has held that a petitioner's "claim seeking to have the BOP reconsider where he is being housed is one that would not fall within the scope of habeas corpus." Wilborn v. Mansukhani, 795 F. App'x 157, 164 (4th Cir. 2019). Further, in Rodriguez v. Ratledge, 715 F. App'x 261, 266 (4th Cir. 2017), the Fourth Circuit found a petitioner's challenge to his transfer to a higher security institution "was not a cognizable 2241 claim, because this petition challenges the conditions of his confinement, not its fact or duration."

Other Courts of Appeal have similarly held that prisoners have no constitutional right to placement in any particular institution or custody classification. Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir.1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification....") (citing Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2537 (1976), Moody v. Daggett, 429 U.S. 78, 87 n.9, (1976); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation.") (Citing Wilson v. Budney, 976 F.2d 957 (5th Cir. 1992)).

---

[20] Pursuant to 18 U.S.C.A. § 3621(b):

The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence.

23

In an unpublished per curiam opinion the Fourth Circuit affirmed that an inmate's classification is administrative and prison officials can change an inmate's security classification "for almost any reason or no reason at all."[21] Brown v. Ratledge, No. 7-16-CV-00303, 2017 WL 4404248, at *7 (W.D.Va. Sept. 29, 2017, aff'd, 709 F. Appx. 215 (4th Cir. 2018) (per curiam) (unpublished) (citations omitted).

Because the sole issue raised by Petitioner is the denial of his requested transfer, which is not appropriate for disposition through a § 2241 proceeding, this case should be dismissed for failure to state a claim upon which relief may be granted. To the extent that Petitioner contests his custody classification, that subject is also inappropriate for disposition in a § 2241 proceeding because a challenge to custody classification contests the conditions of confinement, not the fact or duration of confinement. That subject is within the purview of the BOP, and is improperly considered for review in a § 2241 proceeding. Accordingly, Petitioner's claim is not appropriate in a § 2241 proceeding, even if this Court had subject matter jurisdiction.

---

[21] The district court more fully explained that:

A prison inmate does not have a protectable liberty or property interest in his custodial classification" and does not have a constitutional right to be housed in a particular facility. See Wolters v. Fed. Bureau of Prisons, 352 Fed.Appx. 926, 928 (5th Cir. 2009) (citing Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)). Classification of inmates is an administrative function, and prison officials can change an inmate's classification for almost any reason or no reason at all. See Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989); Wolters, 352 Fed.Appx. at 928; Mendoza v. Lynaugh, 989 F.2d 191, 194 n. 4 (5th Cir. 1993). Therefore, the court concludes that Brown's allegations do not state a due process violation.

Brown v. Ratledge, 2017 WL 4404248, at *7.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be DENIED and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE** because Petitioner failed to exhaust his administrative remedies prior to filing this petition under § 2241.

It is further **RECOMMENDED** that Respondent's motion to dismiss [ECF No. 8] be **GRANTED**.

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and

Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED:**        May 4, 2023


/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE